PREVIN et al. v. BARELL et al.

Civ. A. No. 12678.

United States District Court
E. D. New York.

June 29, 1953.

Robert Moers, New York City, John R. Bartels, New York City, of counsel, for plaintiffs.

William B. Herlands, New York City, for defendants Barell and Golenbock.

Root, Ballantine, Harlan, Bushby & Palmer, New York City, Edward L. Friedman, Jr., New York City, of counsel, for defendant Gimelli.

BRUCHHAUSEN, District Judge.

Plaintiffs move, pursuant to Rule 39(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., for an order granting a jury trial. It is conceded that they failed to demand such trial within the time prescribed by Rule 38(b). They contend that the delay was inadvertent and urge the Court to exercise its discretion in their favor.

The plaintiffs sue for damages in the sum of $202,549, arising out of the alleged fraudulent conspiracy of the defendants. In substance, the plaintiffs state that they owned a controlling interest in a plastics corporation, the assets whereof included two inventions; that they negotiated with two individuals named Levine for a sale to them of the said property for the sum of $240,000; that the Levines employed two of the defendants, members of the Bar, to aid them in the transaction and induced the third defendant, one of the stockholders of the plaintiffs' corporation, to join them; that the Levines negotiated and planned to acquire the said property by trickery; that they proceeded to offer bribes to the plaintiffs' associates for the purpose of furthering their scheme; that directions were given to plaintiffs' associates that they pretend to the plaintiffs that they considered the patents to be worthless, to the end that the plaintiffs would be thereby encouraged to part with their interest for a much smaller sum; that the plaintiffs were urged to appear at a place selected for the closing where they were met by the defendants and informed by them that the Levines would not go through with the deal on the basis agreed upon; and further informed that Corbett, a key man in the plaintiffs' corporation, had announced that the inventions were of no value and that he intended to leave the plaintiffs' employ; that the circumstances were such that the plaintiffs' business must be liquidated; that the defendant Gimelli was the purchaser, that the said lawyers were representing him and that the deal must be consummated at once for the sum of about $37,000, not the sum of $240,000, because of a pending deal with one Woloch and that the plaintiffs, acting on those representations and statements parted with their property; that the representations were false and untrue and were all part of a scheme to permit the Levines to acquire the property at about $200,000 below its real value; that in fact the Levines had agreed to supply the capital to Gimelli; that the purchase was made for the Levines; that they were secretly waiting nearby to consummate their deal; that the defendants were acting for the Levines; that the first payment of $10,000 on account of the purchase price of $37,000 was not furnished by Gimelli, as was represented by the defendants, but that the same was supplied by the Levines; that Gimelli did not have $10,000 on deposit; that directly after the closing between the plaintiffs and the defendant Gimelli, the Levines paid over a substantial sum of money and acquired 50 per cent of the stock of the plaintiffs' corporation.

There can be no question that in a case of this kind, the plaintiffs were entitled as a matter of right to a jury trial if they had demanded it promptly, as prescribed in Rule 38(b). It is inconceivable that the plaintiffs deliberately agreed to waive a jury trial or that any experienced attorney, representing them, would follow that course. It is significant that in the

case of S. S. Kresge Co. v. Holland, 6 Cir., 158 F.2d 495, 497, the Appellate Court held that the trial Court did not abuse its discretion in granting a jury trial in a personal injury action, stating that it was an action "peculiarly one to be decided by a jury." See also Hargreaves v. Roxy Theatre, D.C., 1 F.R.D. 537. An action for damages for personal injuries involves issues as to the amount of damage and the credibility of witnesses to an extent similar to an action of the type we are now concerned with.

■ Nevertheless, the plaintiffs have the burden of convincing this Court that the omission to seasonably demand such trial was inadvertent.

■ Issue was joined herein on September 15, 1952. No note of issue has been filed. This motion was made more than eight months after such joinder of issue. In opposing the motion, the defendants stress the length of time the plaintiffs have taken in seeking their relief. Mere lapse of time is not an important factor if the delay is satisfactorily explained. One month's delay, if inexcusable, may be long enough to warrant the Court not to exercise its discretion in favor of the moving party. The facts and circumstances must be examined and considered in each case. A principal reason advanced in support of this motion is contained in the following statement of the plaintiffs' attorney (page 8 of the moving affidavit):

"My practice has been almost entirely in our State courts here in different counties, where the rules and practice are to make the jury demand with or in a note of issue. It was my belief at the time that this procedure was the same in the U. S. Court."

It is not disputed that in the Supreme Court of the State of New York, a court of general jurisdiction, the jury demand is properly made at the time of service and filing of the note of issue, rather than within ten days after joinder of issue, the practice in the Federal Court. In the case of Bowles v. Samonas, D.C., 7 F.R.D. 104, the Court granted a motion for a jury trial of the nonequitable issues, although there was a six months default in making the motion. Therein, too, counsel asserted that the failure to act promptly was caused by his assumption that the procedure in the Federal Court was similar to that of the State Court.

This Court is aware that such an excuse in and by itself may not be sufficient to warrant the exercise of its discretion. It is, however, to be weighed with other circumstances.

Voluminous affidavits and briefs are submitted, bearing upon the alleged inadvertence of the plaintiffs in demanding a jury trial. Four actions were commenced by the plaintiffs in the Courts of New York and Massachusetts. A principal contention is that this multiplicity of suits arose out of the desire of the plaintiffs to select a forum, promising an early jury trial. This claim gains support by the fact that the various forums selected for the lawsuits had jury calendars which were fairly current. Further support comes from the affidavits of the plaintiffs and their attorneys, one of them the head of a well known New York law firm. It appears therein also that at an early stage of the litigation they seriously considered submitting the dispute to arbitration but rejected it for the reason that the plaintiffs would thereby be deprived of a jury trial.

The first of the court actions was commenced by the plaintiffs against the Levines in the Supreme Court, New York County. Plaintiffs discontinued it for the reason, stated by them, that a jury trial could not be had for 2½ years. The plaintiffs further state that they later commenced a similar action against the same defendants in the Federal Court in Massachusetts for the reason that the jury calendar there was not more than one year in arrears. No other valid reason appears for dropping the first action in favor of the later one, especially in that this course involved additional expense and retaining counsel in the foreign state.

The New York attorney who assumes most of the blame for the failure to demand

a jury trial asserts that he prepared the complaint in the later action and forwarded it to his Massachusetts associate for filing.

This action was instituted in this Court in June 1952. It will be noted that the defendants are not the same parties as in the action in the Massachusetts District Court although the cause of action is substantially the same. The plaintiffs assert that this action has not been pressed because it would take several years longer to reach it for jury trial than the action in the said foreign state. The plaintiffs' counsel concedes that he gave little thought to this action although it remained undisposed of, also that whichever action was first tried, that one would be controlling.

A fourth action has recently been commenced against the Levines in the Massachusetts State Court. The plaintiffs assert that this action likewise was instituted with the thought of obtaining a quicker jury trial.

It appears that the plaintiffs' Massachusetts attorney discovered for the first time on December 8, 1952, that a jury trial had not been demanded. However, the plaintiffs' New York attorney, who was the principal counsel in the litigation, was not informed of this until February 9, 1953. Undoubtedly the failure of the Massachusetts attorney to confess his knowledge of the omission was because he was reluctant to admit it and felt that he might succeed in rectifying the error himself or at least examine the authorities and devise some means to cure the error. Soon after so learning of the omission, plaintiffs' attorneys caused a motion to be made in the action in the Federal court in Massachusetts for a jury trial. It was heard early in March 1953 and denied without opinion on March 31, 1953. A motion for reargument or for leave to discontinue the action was also denied. A few days thereafter, on April 30, 1953, the plaintiffs sought a writ of mandamus in the Circuit Court. This was denied on May 20, 1953 and the case was set for trial without a jury on September 15, 1953. The Circuit Court handed down an opinion, 1 Cir., 204 F.2d 417, mainly devoted to an explanation of the procedure for mandamus. It was not a denial on the merits, although the Court stated that upon an appeal the plaintiffs would have a heavy burden to convince the Court of the merits of their claim. It must be emphasized that the case was not as fully presented to those courts as it has been in this Court. No affidavits by the plaintiffs and the associate New York counsel were there submitted nor were many of the factors now mentioned, called to the attention of the Court on the earlier motion. Furthermore, the plaintiffs did not adequately and properly present their case, although they attempted to do so. It seems that the defendants filed a lengthy answering affidavit in connection with the motion in the foreign court, some time after oral argument was had and that a copy of it was not delivered to the plaintiffs' attorneys or at least did not reach them until about three weeks later. In fact it was received by the plaintiffs' attorneys on April 1, 1953, the same day as the motion was decided and denied. The New York counsel had journeyed to Boston on that day for the purpose of preparing and filing a law memorandum, in that he had reason to believe that because of the Judges' absence from the City, no determination would be made prior to April 6th. While it is true that the plaintiffs' reply affidavit was submitted on the reargument, it is also true that the plaintiffs never had an opportunity to argue that motion. They had assurances that this would be arranged but through various changes in appointments for the argument, they lost out, seemingly without fault on their part.

The plaintiffs' New York counsel has in great detail accounted for the delay in making this motion, setting forth the time consumed in this litigation and the burdens he was met with in his private practice together with distressing partnership controversies.

The defendants will not be prejudiced by the granting of this motion. The claim that the depositions were taken on the theory that there would be a nonjury trial and that the defendants would have pursued a different course if they were to be

used in a jury trial has no merit. The fact is that most of the depositions were taken before the default took place. Furthermore, the extracts from the depositions do not support the defendants' position. It is significant in this connection that the plaintiffs offered to stipulate that the depositions of the witnesses could be used in the action in the foreign court as well as in this action. The defendants did not accede but limited the stipulation to the testimony of one of the witnesses. This offer also shows that as late as September 1952, the plaintiffs deemed the case in this Court to be active.

This Court is not convinced that this case presents such a complexity of proof as to make a nonjury trial the more preferable. The depositions already taken indicate that the case will largely deal with the credibility of witnesses. In the case of Paper Stylists v. Fitchburg Paper Company, D.C., 9 F.R.D. 4, 5, wherein the court granted a jury trial, after the plaintiffs inadvertently failed to demand it on time, the court pointed out that if the plaintiffs had originally demanded a jury trial, as they had the right to do, the same burdensome problems would have been presented. This Court also subscribes to that part of the opinion as applicable to this case, which states:

"There is no question but that there is a conflict of authority as to the exercise of the discretion of the court as empowered by Rule 39(b). However, it is my considered judgment that the plaintiff presents an intelligent, reasonable excuse for its failure to comply with the rule as to timely demand. Mistake, error, omission or inadvertence should be corrected in instances where reasonable explanations are presented and where important rights may be destroyed.

"In reaching this conclusion, I confine the decision to the peculiar circumstances involved and follow in that particular the reasoning set forth in Bowles v. Samonas, D.C., 7 F.R.D. 104."

The motion is granted. Submit order.